IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **Michael Holloway,** <br> **Plaintiff,** | ) <br> ) <br> ) | |
| v. | ) | 1:16cv410 (LMB/MSN) |
| | ) | |
| **Lt. Taylor and Officer Bradley,** <br> **Defendants.** | ) <br> ) <br> ) | |

MEMORANDUM OPINION

Michael Holloway, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants Lieutenant C. Taylor and Officer R. Bradley used excessive force by applying metal handcuffs during plaintiff's transportation to a medical appointment at the Medical College of Virginia ("MCV"). Defendants have filed a joint Motion for Summary Judgment with a supporting memorandum of law and exhibits and provided plaintiff with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K). Plaintiff has filed a Motion in Limine, Dkt. No. 31, to exclude from evidence the affidavits of officers A. Boone and L. Smallwood, which defendants included as exhibits in support of their memorandum of law, Dkt. No. 27, and he has submitted a "Brief," which will be taken as his memorandum in opposition to defendants' joint Motion for Summary Judgment. After consideration of these submissions, the Motion for Summary Judgment will be granted, judgment will be entered in favor of the defendants, and plaintiff's Motion in Limine and Motion for Evidentiary Hearing will be denied.

**I. Background**

Plaintiff alleges that on July 10, 2015, he was an inmate at Indian Creek Correctional Center ("ICCC") when he was escorted from his cell to a room in the back of the medical

department to change clothes for an appointment with his cardiologist at MCV. Compl. § IV. Plaintiff's face sheet and gate pass, which ordinarily would include any relevant medical restrictions, did not contain information concerning a metal cuff restriction. Smallwood Aff. ¶ 4. Such a restriction, however, was noted in plaintiff's medical records for the period from October 3, 2014 to October 3, 2015. Dkt. No. 40, Ex. 1 at 37. Plaintiff advised the defendants that if they required him to wear metal handcuffs during his transportation to MCV, he would refuse to go. Compl. § IV. At that point, Taylor grabbed plaintiff by the collar and upper right arm and forced plaintiff against a brick wall. Id. To maintain control over plaintiff, Officer Bradley grabbed plaintiff's left arm, twisted it behind his back, and the defendants held plaintiff in that position while Taylor asked plaintiff if he was going to change his mind regarding the metal handcuffs. Id. Plaintiff eventually agreed to wear the metal handcuffs. Id.

Defendants have submitted affidavits which contain the following additional facts. On the morning of July 10, 2015, plaintiff acted aggressively and belligerently towards Bradley, used foul language, and, in an "aggressive manner," refused to be searched or wear metal cuffs. Bradley Aff. ¶ 4; Taylor Aff. ¶ 5. Plaintiff was also upset because the jumpsuit provided for his appointment was too large, and he threw the jumpsuit back onto a shelf. Bradley Aff. ¶ 4. Taylor attempted to talk plaintiff into turning around to be searched, but he remained "aggressive, argumentative, and belligerent" and again refused to be searched. Taylor Aff. ¶ 5. Plaintiff began walking away from Taylor when Taylor grabbed the collar of plaintiff's shirt and advised plaintiff that he needed to change for his medical run. Bradley Aff. ¶ 5; Taylor Aff. ¶ 6. When plaintiff "struggled" and attempted to "pull away" from Taylor, the defendants "placed [plaintiff] up against the back wall of the intake area." Bradley Aff. ¶ 5; Taylor Aff. ¶ 6. Because plaintiff continued to "act aggressively," Bradley pinned plaintiff's arm behind his back "to obtain, and

2

maintain, control of him," and Taylor advised plaintiff that "he could either get dressed for the appointment or [defendants] would do it for him." Bradley Aff. ¶ 5. At that point, plaintiff calmed down, complied with the strip search, and put on the jumpsuit. Id. According to Bradley, the force used on plaintiff was necessary "to bring the situation under control," and had plaintiff "obeyed orders to be searched in preparation for his transport, no force would have been necessary." Id. ¶ 7.

Plaintiff does not expressly deny that he yelled at the defendants or acted aggressively towards them. See Dkt. Nos. 24, 31. Instead, in his Brief he states:

> [I]t is not a good strategy for [the defendants] to insinuate [that plaintiff] came into the medical intake unit in a rage. Every inmate welcomes the chance to [sic] Richmond. But, to prevail the defendants know they must risk perjury or its equivalent. The defendants [sic] version of events uses an interpretation of my frame of mind, unfortunately that elaborate and graphic fabrication is inconsistent with the frame of mind I had.
>
> But, for reasons beyond what the defendants and their witnesses claim. [sic] It was decided right before my eyes to disregard duty, procedures, rules, rights, and my medical condition. And I was helpless, in fear for my safty [sic] I tryed [sic] to place myself beyond harms [sic] way. But it became an exercise in cruel and unusual punishment. And whether they thought they could get away with the unnecessary and wanton infliction of pain and injury, is evident in the (1) unrealistic story, the (2) inconsistent statements, (3) contradictions and (4) lies in their defense.

Dkt. No. 35 at 11, 15. In addition, plaintiff states "[i]t is also hinted that the plaintiff was animated and belligerant [sic] by the words loud and aggressive. That sounds like the behavior of a man out of his mind and intimidating. I don't think I could intimidate Lieutenant [sic] Taylor and certainly not Officer Bradley." Dkt. No. 24 at 15.

Defendants deny any knowledge of a medical restriction requiring plaintiff to be restrained using plastic cuffs. Bradley Aff. ¶ 8. More specifically, Bradley states that he did not have access to any of plaintiff's medical records or medical orders. Id. Taylor states that, had

3

plaintiff advised Taylor of any medical restrictions, he would have verified those restrictions with institutional medical staff before preparing plaintiff for transport. Taylor Aff. ¶ 7. Plaintiff alleges that he advised Taylor that he could not wear metal cuffs because he was taking blood thinners that caused "bruising and swelling at almost the simplest contact," and an exemption order to that effect could be found in plaintiff's medical file.[1] Compl. § IV; Dkt. No. 31 at 2. Plaintiff contends that, when provided this information, Taylor laughed at plaintiff, advised plaintiff that he did not have time to check plaintiff's medical file, and stated that plaintiff "would be wearing [metal handcuffs] that day." Dkt. No. 31 at 2. According to plaintiff, when he told the defendants that he would refuse to go to his medical appointment if they required him to wear metal handcuffs, Taylor grabbed plaintiff by the collar, twisted his right arm behind his back, and pinned him against a cement wall; Bradley grabbed plaintiff's left arm and pinned it behind his back. Id. Plaintiff alleges that he was held with his arms behind his back, and he only agreed to wear metal cuffs because of the pain he was suffering and his fear "for his life" due to his medical condition. Dkt. No. 31 at 2; Dkt. No. 35 at 2.

Plaintiff alleges that he had bruising and swelling on his shoulders, arms, hands, ankles, legs, and knees and could not walk for weeks following this incident. Dkt. No. 31 at 3; Dkt. No. 35 at 2; however, the medical records from July 10, 2015 contradict most of those allegations by not mentioning any swelling or complaints of pain in plaintiff's arms or legs. Dkt. No. 40, Ex. 1 at 17. A treatment note from July 11, 2015, only mentions "a large dark blue/black bruise to [his] L bicep and swelling (soft) to [his] R elbow." There is also a reference to "a small soft nodule to

---

[1] In each individual pleading, plaintiff does not claim, under penalty of perjury, that the facts set forth are a true and accurate representation of the events described. Instead, plaintiff has filed a separate pleading titled "certification" in which he declares under penalty of perjury that the facts he has set forth are true. Dkt. No. 41. In deference to his pro se status, plaintiff's certification will be taken as a certification encompassing the totality of his pleadings.

4

[the] top of [his] R foot," but plaintiff reported having had the nodule for seven days, which means it was unrelated to the incident at issue. Dkt. No. 1, Ex. 1.

Plaintiff's medical records also belie his contention that he was unable to walk for weeks following the incident. See Dkt. No. 40, Ex. 1. Although the July 11, 2015 treatment notes reflect that plaintiff reported having swollen feet, his feet did "not appear swollen at [that] time." Dkt. No. 1, Ex. 1. Treatment notes dated July 17, 2015 reflect that plaintiff was "agitated" and "cursing" because he had been advised that "his condition was stable" and he did not need to be in the medical unit, notwithstanding plaintiff's opinion that he should "have his meals and meds served to him" in the medical unit. Dkt. No. 1, Ex. 1. September 9, 2015 medical records document that plaintiff complained of leg and arm swelling along with bruising from wearing cuffs, but the nurse noted "no edema on exam today" and plaintiff stated that the "bruising is better." Id. at 13. Moreover, no leg or arm injuries were noted in the medical history portion of plaintiff's September 9, 2015 records. Id. at 14.

Finally, plaintiff contends that several statements in the affidavits provided by defendants are contradictory. Dkt. No. 31 at 5. More specifically, plaintiff appears to allege that if the defendants and other officers acknowledged that plaintiff was yelling and talking loudly, then they cannot simultaneously assert that plaintiff did not inform them of his metal cuff restriction. Id. at 7. Plaintiff further alleges, without any elaboration, that defendants advance an unrealistic story, rife with inconsistencies, contradictions, and lies. Dkt. No. 35 at 15. Moreover, plaintiff contends, without further support, that the medical records provided to him by ICCC are incomplete, contradictory, and contain altered and false entries. Dkt. No. 40 at 3.

Plaintiff apparently tried to file criminal charges against Bradley and Taylor for their actions, but the magistrate who investigated the incident did not find probable cause to issue

5

charges against the defendants. Dkt. No. 1, Ex. 1. In the magistrate's October 20, 2015 letter to plaintiff concerning his investigation of plaintiff's allegations, which plaintiff attached as an exhibit in support of his complaint, the magistrate stated:

> [a]fter our hearing on September 25, I later examined the evidence under oath presented by Officer Dawson at Indian Creek Correctional Center. Video footage of the incident you described to me does not support your allegations. Officer Dawson and Sergeant Doran readily provided the investigation file for me to review and some of the witness statements in the official reports contradicts [sic] your testimony to me. In addition, the result of the prison's own internal investigation was that your allegations were unfounded.

Id. The magistrate's stated reason for not issuing charges was a "lack of evidence." Id.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party, thus, bears the burden of proving that judgment on the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The facts which a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." Anderson, 477 U.S. at 248. Unsubstantiated, conclusory claims without evidentiary support are insufficient to defeat a summary judgment motion. Braithwaite v. Hinkle, 752 F. Supp. 2d 692, 694 (E.D. Va. 2010), aff'd, 412 F. App'x 583 (4th Cir. 2011). Therefore, evidence that is "merely colorable, or is not significantly probative," will not preclude summary judgment. Anderson, 477 U.S. at 249–50 (internal citations omitted). Summary judgment is appropriate only when no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587

### III. Analysis

In determining whether the record supports an Eighth Amendment claim that defendants used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Whitley v. Albers, 475 U.S. 312, 320-21 (1986). In the latter situation, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9; see Wilkins v. Gaddy, 559 U.S. 34, 37–39 (2010) (opining that an excessive force claim involving only de minimis injury is not subject to automatic dismissal). Nevertheless, the extent of injury suffered by an inmate at the hands of a prison official may be relevant to an Eighth Amendment inquiry, both because it may suggest whether the use of force could plausibly have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the force applied. Wilkins, 559 U.S. at 37–39. Summary judgment in favor of defendants on plaintiff's claims of excessive force is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the amount of force used by Bradley and Taylor in restraining plaintiff was reasonable, given the circumstances, for several reasons.

7

First, the state magistrate who investigated plaintiff's complaint against Taylor and Bradley did not find sufficient evidence to support criminal charges against them under a probable cause standard, which requires that a magistrate, before issuing an arrest warrant, conclude that based on the totality of the circumstances there is "a fair probability" that a crime has occurred. Corey v. Virginia, 381 S.E.2d 19, 22 (Va. Ct. App. 1989). Significantly, following a September 25, 2015 evidentiary hearing, which included a video of the incident, concerning the charges, the magistrate concluded that "[v]ideo footage of the incident . . . [did] not support [plaintiff's] allegations" and stated that "some of the witness statements in the official reports contradict[ed] [plaintiff's] testimony." Dkt. No. 1, Ex. 1. Moreover, plaintiff, who offered this letter as evidence in support of his complaint, does not directly challenge the validity the magistrate's findings.

Second, plaintiff has failed to demonstrate that the force used by defendants was excessive. Although there is a factual dispute between Taylor and plaintiff as to whether plaintiff told defendants that he had medical reasons for not wearing metal handcuffs, even assuming that plaintiff advised defendants of his metal cuff restriction, the pleadings, affidavits, and exhibits on file do not demonstrate that Taylor and Bradley used excessive force in restraining plaintiff under the circumstances. Plaintiff does not deny that while he was being prepared for transport to his routine appointment at MCV, he acted aggressively and belligerently towards Bradley, used foul language, and, in an "aggressive manner," refused to be searched or wear metal cuffs. Bradley Aff. ¶ 4; Taylor Aff. ¶ 5. Moreover, the medical records submitted by plaintiff in support of his complaint indicate that on at least one other occasion he became similarly "agitated" and began "cursing" when he disagreed with ICCC medical staff regarding his medical treatment. Dkt. No. 1, Ex. 1. In addition, affidavits submitted by the defendants indicate that before Taylor physically

restrained plaintiff, he attempted, to no avail, to convince plaintiff to turn around to be searched. Taylor Aff. ¶ 5. Notwithstanding Taylor's efforts, plaintiff remained "aggressive, argumentative, and belligerent." Id. Taylor did not attempt to physically restrain plaintiff, until plaintiff walked away from Taylor, "struggled," and attempted to "pull away." Bradley Aff. ¶ 5; Taylor Aff. ¶ 6. Even then, defendants merely "placed [plaintiff] up against the back wall of the intake area" and pinned his arms behind his back "to obtain, and maintain, control of him." Id. The force used by Bradley was limited to twisting plaintiff's arm behind his back in order to maintain control of him; this was done so that Taylor could handcuff plaintiff. Id. Defendants did not kick, punch, or otherwise strike plaintiff, and when plaintiff was pinned, defendants advised plaintiff that "he could either get dressed for the appointment or [defendants] would do it for him." Bradley Aff. ¶ 5. Plaintiff's July 11, 2015 treatment note, which notes only "a large dark blue/black bruise to [his] L bicep and swelling (soft) to [his] R elbow" further corroborate defendants' version of events. Dkt. No. 1, Ex. 1.

To be sure, it is unfortunate, and perhaps even negligent, that unnamed institutional employees failed to include plaintiff's metal cuff restriction on the face sheet and gate pass that were available to the defendants. But, in the absence of such information, defendants' failure to abide by those restrictions would not constitute an Eighth Amendment violation. See Astorga v. Vick, No. 15-3191-CM, 2017 WL 1397540, at *4 (D. Kan. Apr. 17, 2017) (concluding that plaintiff's allegations that defendants injured his shoulder when they forced him into regular handcuffs, despite plaintiff informing them that he had a medical restriction requiring extra links, by yanking his arms were not sufficient to state a claim for use of excessive force).

Finally, plaintiff's asserted injuries, bruising and swelling in his arms and legs, are not indicative of the use of excessive force. See Taylor v. McDuffie, 155 F.3d 479, 482 (4th Cir.

9

1998) (concluding that injuries similar to plaintiff's alleged injuries, including abrasions, slight swelling, and tenderness, were de minimis). Plaintiff's attendance at his routine medical appointment, which immediately succeeded the incident, without any stated difficulty further belies his claim that he was unable to walk for weeks. See Dkt. No. 35. Medical records one and seven days after the incident do not support any claim of being unable to walk as a result of the incident. Specifically, his feet did "not appear swollen" on July 11, 2015, and that, on July 17, 2015, "his condition was stable" and he was able to walk to meals and pill call. Dkt. No. 1, Ex. 1. Thus, plaintiff's injuries do not suggest that a greater amount of force was applied than would have been required to ensure that he would submit to a search and agree to be restrained. Wilkins, 559 U.S. at 37–39. Under these circumstances, a reasonable factfinder could not conclude that defendants acted "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Therefore, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim of excessive force.

### IV. Motions

Plaintiff has filed two outstanding motions, a Motion in Limine to exclude the affidavits of officers A. Boone and L. Smallwood and a Motion for Evidentiary Hearing. In support of his Motion in Limine, plaintiff states that he finds it suspicious that officers Boone and Smallwood did not provide affidavits detailing their recollection of the events that gave rise to this cause of action sooner than one year after the incident occurred, and he takes issue with the fact that neither individual was mentioned in the defendants' answer to the complaint. Dkt. No. 31 at 4. In addition, plaintiff contends that the aforementioned affidavits should be excluded because they provide nothing more than "confusion, lies and contradiction." Id. at 7. Construed liberally, plaintiff's motion will be taken as a motion to exclude the affidavits under Federal Rule of

Evidence 403. Rule 403 states that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues."

Here, there is no question that the evidence that plaintiff seeks to exclude is relevant to the penultimate question in this case: whether the defendants subjected plaintiff to excessive force. Both affidavits provide information that sheds light on what took place between plaintiff and the defendants in the ICCC medical department on July 10, 2015, and are not confusing. Therefore, plaintiff's Motion in Limine will be denied. Because defendants are entitled to summary judgment as a matter of law, plaintiff's Motion for Evidentiary Hearing will be denied as moot.

## V. Conclusion

For the foregoing reasons, defendants' joint Motion for Summary Judgment will be granted, and summary judgment will be entered in their favor, and plaintiff's Motion in Limine and Motion for Evidentiary Hearing will be denied. An appropriate Order and Judgment shall issue.

Entered this 14th day of August 2017.

Alexandria, Virginia

/s/ Leonie M. Brinkema
Leonie M. Brinkema
United States District Judge

11